UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 4:17-cv-00524 |
| | : | (4:19-cr-01123) |
| Plaintiff, | : | |
| | : | ORDER |
| vs. | : | [Resolving Docs. 42, 50] |
| | : | |
| DAINON L. JONES, | : | |
| | : | |
| Defendant. | : | |

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On February 8, 2018, Defendant Dainon Jones pleaded guilty to one count of conspiring to possess or distribute 100 grams or more of phenylfentanyl, a fentanyl analogue.[1] Jones now moves to vacate, set aside, or correct his sentence.[2] He also requests the appointment of counsel, limited discovery, and an evidentiary hearing.[3] The Government opposes.[4]

For the following reasons, the Court **DENIES** Jones's petition to vacate his sentence and **DENIES** his motion for the appointment of counsel, limited discovery, and an evidentiary hearing.

### I. Background

According to his plea agreement, in November 2017, Jones ordered phenylfentanyl, a fentanyl analogue, from China. His coconspirator wired money to China to pay for the

---

[1] Doc. 18.
[2] Doc. 42.
[3] Doc. 50.
[4] Doc. 49; Doc. 54.

phenylfentanyl.[5]

On November 20, 2017, Customs and Border Patrol Officers found a package from China that contained 273.67 grams of a substance containing a fentanyl analogue.[6] About a week later and on November 29, 2017 officers found a second package containing 21.12 grams of a fentanyl analogue substance.[7] Both packages were sent to the same Youngstown, Ohio address and addressed to Erik Fields.[8] The officers were unable to link anyone named "Erik Fields" to the Youngstown address.[9]

On November 29, 2017, an undercover officer delivered two packages that Defendant Jones later retrieved, believing that they contained narcotics.[10] That same day, Jones gave the packages to his coconspirator, and they transported the two parcels to a house in Girard, Ohio.[11]

On February 8, 2018, Jones pleaded guilty to one count of conspiracy.[12] As part of the plea agreement, he agreed that "[t]he amount of drugs possessed and distributed by Defendant during the course of the conspiracy and/or directly attributable to Defendant's actions and reasonably foreseeable within the conspiracy was at least 100 grams, but less than 300 grams of fentanyl analogue."[13]

On June 29, 2018, the Court sentenced Jones to 121-months imprisonment and five

---

[5] Doc. 18.
[6] Doc. 18 at 7.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.* at 7-8.
[12] Doc. 18.
[13] *Id.*

years of supervised release.[14]

## II. Jones Has Not Waived His Ineffective Assistance of Counsel Claims.

A federal prisoner may collaterally attack his sentence by filing a § 2255 motion to vacate, set aside, or correct the sentence. To prevail on a § 2255 motion, a movant "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid."[15]

Jones argues that his counsel's ineffectiveness violated his constitutional rights. Responding, the Government says that Jones has waived his ability to bring most of his claims.

The Court agrees with the Government that Jones has waived his right to bring a 28 U.S.C. § 2255 claim on most grounds; he did so in his plea agreement.[16]

The Government also argues that Jones's ineffective assistance claims for conduct that occurred before his guilty plea are meritless because they are not linked to the voluntariness of his plea.[17]

Each of the claims in the present petition are brought under the auspices of ineffective assistance of counsel claims. In the plea agreement, Jones preserved his ability to bring claims for ineffective assistance of counsel.[18] Additionally, Petitioner Jones argues

---

[14] Doc. 27.
[15] *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citation omitted).
[16] Doc. 18 ¶ 19.
[17] Doc. 49 at 5-6 (citing *Rice v. Olson*, No. 16-1125, 2016 WL 3877866, at *2 (6th Cir. July 15, 2016) for the proposition that a defendant may not raise claims of constitutional violations for events prior to the entry of a guilty plea unless the claims attack the voluntariness or intelligent entry of the guilty plea itself).
[18] Doc. 18 ¶ 19.

Case No. 4:17-cr-00524
Gwin, J.

that each of his counsel's claimed errors affected the voluntariness of his plea.[19] The Court will therefore evaluate the merits of each claimed error.[20]

### III. Jones's Claims Fail to Satisfy the Standard for Relief.

Defendant Jones brings five ineffective assistance of counsel claims. He says that, due to his counsel's ineffective assistance, his plea was not voluntarily entered.[21]

To prevail on a claim of ineffective assistance of counsel, the defendant must prove that his counsel's performance was deficient and that the defendant was prejudiced by such performance.[22]

To establish counsel's deficient performance, Jones must show that the representation fell "below an objective standard of reasonableness."[23] The Court's scrutiny of counsel's performance is highly deferential and "counsel is strongly presumed to have rendered adequate assistance."[24]

In the context of a plea agreement, a defendant may show prejudice if "there is a reasonable probability that the outcome of the plea process would have been different had he received competent advice."[25]

As discussed below, Jones has been unable to satisfy the *Strickland* standard for any of his claims.

### a. Defendant's Counsel Was Not Ineffective for Failing to Challenge the

---

[19] Verbatim, Jones asks the Court to apply the statement of law regarding "the voluntary and intelligent nature of [the] guilty plea when defense counsel fail[s] to conduct [the] required investigation" to each of his claims. Doc. 51 at 14. As stated above, the Court construes this request to mean that each of the claimed errors affected the voluntariness of Jones's plea.

[20] *Rice v. Olson*, No. 16-1125, 2016 WL 3877866, at *2 (6th Cir. July 15, 2016) (stating that after entering a guilty plea a defendant can only raise claims relating to the voluntary and intelligent nature of the plea).

[21] Doc. 51 at 10, 24.

[22] *Strickland v. Washington*, 466 U.S. 668, 688-691 (1984).

[23] *Wise v. United States*, No. 5:19 CV 463, 2019 WL 3068252, at *2 (N.D. Ohio July 11, 2019).

[24] *Id.* (internal quotations omitted).

[25] *Id.*

### Validity of The Indictment.

Petitioner Jones first argues that his defense counsel was constitutionally ineffective for failing "to investigate and research the validity of [the] indictment at Count One."[26]

In Count One Jones is charged with conspiracy in violation of 21 U.S.C. § 846. The indictment states that Jones conspired with his co-defendant to violate 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(vi). These statutes make it unlawful to "possess with intent to manufacture, distribute, or dispense, a *controlled substance*."[27]

The indictment claims that Jones and his coconspirator possessed with the intent to distribute phenylfentanyl.[28] Phenylfentanyl is not a controlled substance, but rather a controlled substance *analogue*.[29]

Jones contends that the indictment was invalid because it should have also referenced the statute that allows courts to treat a controlled substance analogue the same as a controlled substance if it is intended for human consumption.[30] He argues that his counsel was ineffective for failing to raise this argument.[31]

An indictment must "be a plain, concise, and definite written statement of the essential facts constituting the offense charged."[32] An indictment is constitutionally sufficient if it "contains the elements of the offense charged and fairly informs the

---

[26] Doc. 51 at 10.
[27] 21 U.S.C. § 841(a)(1) (emphasis added).
[28] Doc. 8 at 1.
[29] Although "fentanyl analogue" was not a defined term under the Sentencing Guidelines until Nov. 1, 2018, at least one court determined that under the plain meaning of the term, an analogue of fentanyl meant "a chemical compound structurally similar to another but differing often by a single element of the same valence and group of the periodic table as the element it replaces." *United States v. McCray*, 346 F. Supp.3d 363, 366-67 (W.D.N.Y. 2018).
[30] 21 U.S.C. § 813(a). Jones also argues that the definition of "controlled substance analogue" under the relevant subchapter should have been included in the indictment as it states, *inter alia*, that a "controlled substance analogue . . . does not include – a controlled substance." 21 U.S.C. § 802(32)(C)(i).
[31] Doc. 51 at 7.
[32] Fed. R. Crim. P. 7(c)(1).

Case No. 4:17-cr-00524
Gwin, J.

defendant of the charge . . . and enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."[33]

When an indictment charges a conspiracy, "it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy."[34]

The elements of conspiracy under 21 U.S.C. § 846 are "(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy."[35] Jones's indictment contains all of the elements of the conspiracy offense. It also provides enough details of the crime that he would be capable of claiming double jeopardy for the same crime in future prosecutions.[36] The indictment is therefore sufficient even if it omits the human consumption language necessary to an offense involving a controlled substance analogue as Jones argues.

Counsel is not required "to raise frivolous defenses or arguments to avoid a charge of ineffective representation."[37] Jones's proposed indictment objection would have been frivolous because the indictment was not insufficient. Jones's counsel was not ineffective for failing to raise this argument.

### b. Counsel Was Not Ineffective for Failing to Challenge the Drug Quantity in Count One of The Indictment.

---

[33] *U.S. v. Ogbazion*, No. 3:15-cr-104, 2017 WL 1315813, at *8 (S.D. Ohio Apr. 10, 2017).

[34] *Id.*; *see also U.S. v. Meade*, 677 Fed. Appx. 959, 967-68 (6th Cir. 2017) (stating that "[t]he indictment must allege that two or more people agreed to commit some form of money laundering, but the precise elements of the specific money-laundering crime are not required"); *U.S. v. Reynolds*, 762 F.2d 489, 494-95 (6th Cir. 1985) (upholding an indictment where "the elements of conspiracy were clearly alleged and the nature of the agreement adequately set forth").

[35] *U.S. v. Collins*, 799 F.3d 554, 589 (6th Cir. 2015).

[36] *See Ogbazion*, 2017 WL 1315813, at *8.

[37] *White v. U.S.*, 69 Fed. Appx. 222, 223 (6th Cir. 2003) (citing *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986)).

Case No. 4:17-cr-00524
Gwin, J.

Jones next argues that his counsel was ineffective for failing to challenge the drug quantity in Count One of the indictment.

Count One charges Jones with conspiracy "to possess with the intent to distribute and to distribute 100 grams or more of a mixture and substance containing a detectable amount of phenylfentanyl (a fentanyl analogue[]) a Schedule I controlled substance."[38] Jones argues that his counsel should have objected to the indictment language because the evidence does not show that he possessed more than 100 grams of *phenylfentanyl*. Instead, the analysis of the substances in the two packages sent to Jones showed that one package contained 273.67 grams of methoxyacetylfentanyl while the other contained 21.12 grams of phenylfentanyl.[39] Both are fentanyl analogues.[40]

As with his other claims of ineffective assistance, Jones makes the conclusory assertion that due to this error his plea was not knowingly, intelligently, or voluntarily entered. He does not specify how the alleged error in this situation led him to agree to a guilty plea he otherwise would not have entered into.

The Court does not see how Jones was prejudiced by this alleged error. Jones did not plead guilty to a possession or distribution charge. Rather, he pleaded guilty to conspiracy, which, as stated above, only requires Jones's agreement, knowledge, and participation in the scheme. In the context of Jones's conspiracy charge, the specific type of fentanyl analogue is irrelevant.

Jones was also not prejudiced by any sentencing error. The conspiracy statute

---

[38] Doc. 8 at 1.
[39] Doc. 51-2.
[40] *See supra* n. 29 for definition of fentanyl analogue.

subjects defendants to the same penalty as would apply to the underlying offense they conspired to commit.[41] Both fentanyl analogues are treated the same for the purposes of sentencing.[42] In the plea agreement, the stipulated Sentencing Guideline calculation base offense level was 30, which is the base offense level "for a conspiracy involving 100-300 grams of a fentanyl analogue."[43] Whether the indictment referred to the drug as phenylfentanyl, methoxyacetylfentanyl, or simply a fentanyl analogue, the result is the same.

Jones cannot show that counsel was ineffective for failing to raise this argument.

### c. Counsel Was Not Ineffective for Failing to Object to The Definition of Fentanyl Analogue.

Jones next argues that his counsel was ineffective for failing to challenge the definition of fentanyl analogue as unconstitutionally vague. Jones argues that the vague definition led the probation officer to miscalculate the sentencing guideline range.

First, Jones's argument focuses on the allegedly vague definition's ramifications for the pre-sentencing report and sentencing phase. As Jones has waived his right to bring almost all claims aside from ineffective assistance of counsel, he argues that this error is somehow related to his counsel's ineffectiveness.[44]

Jones argues that his counsel should have objected to the PSR fentanyl analogue definition and that this lack of an objection led to sentencing miscalculations. Jones has

---

[41] 21 U.S.C. § 846.

[42] 21 U.S.C. § 841(b)(1)(A)(vi) (stating the penalty for "100 gram or more of a mixture or substance containing a detectable amount of any analogue of [fentanyl]"). The plea agreement and plea colloquy both reflect Jones's agreement that the substances involved were fentanyl analogues without reference to the specific type of analogue. Doc. 18 at 7; Doc. 48 at 14-15. This is likely because fentanyl analogues are categorized together for the purposes of sentencing.

[43] Doc. 18 at 5.

[44] Doc. 51 at 21.

failed to show how. Jones focuses on the presentence report's preparation, rather than on how his counsel's actions in this circumstance prevented him from entering a fully informed plea. He does not explain how the two are connected.

Jones agreed in the plea agreement and plea colloquy that he was in possession of at least 100 grams, but less than 300 grams of a fentanyl analogue.[45] The lab reports support Jones's admission.[46]

The presentence report used the drug types and amounts that Jones agreed to. If Jones disagreed with the characterization of the drugs, the proper time and place for challenging the drug types or quantities was before entering the plea or before the Court used the presentence report at sentencing. Attempting to collaterally attack the evidence and the sentencing guidelines through an ineffective assistance of counsel loses.

Second, as stated earlier in this opinion, Jones's defense counsel was not obligated to raise frivolous motions on his client's behalf. Jones shows no decision finding that the fentanyl analogue definition of is ambiguous. In fact, the Court agrees with the court in *McCray*, the case cited by Jones in support of his claim, that the definition clearly refers to any substance structurally similar to fentanyl.[47] Both identified drugs meet that definition. As the argument Jones claims his counsel should have made would have inevitably failed, it was not ineffective assistance for his counsel to fail to bring it.

---

[45] Docs. 18, 48.

[46] Doc. 51-2.

[47] Jones is correct that the subsequent version of the Sentencing Guidelines inserted a definition of "fentanyl analogue," which was previously undefined. Contrary to Jones's argument, however, this is not prima facie evidence that the term was ambiguous in previous iterations of the Sentencing Guidelines. As the *McCray* court pointed out, courts should employ the regular usage of a phrase in the absence of a definition. The Court fails to find any ambiguity in the common sense definition of the phrase. United States v. McCray, 346 F.Supp.3d 363, 366-67 (W.D.N.Y. 2018). *See also*, *supra* n. 29.

Case No. 4:17-cr-00524
Gwin, J.

### d. The Court Applied the Proper Version of The Sentencing Guidelines.

Jones's fourth argument contends that the Court applied the 2018 version of the Sentencing Guidelines rather than the 2017 version.[48] According to Jones, this resulted in an *ex post facto* violation because the 2017 version of the guidelines differentiated between scheduled and unscheduled controlled substances.[49] Had the Court applied the 2017 version, according to Jones, his possession of the phenylfentanyl would not have been an offense.[50]

The first hurdle to Jones's argument is that the 2017 version of the Sentencing Guidelines does not exist. The 2016 version was in effect when Jones committed the crime in question as well as when the Court sentenced him. The Court applied the 2016 version, the correct version.

Jones admitted in the plea agreement that he possessed between 100 and 300 grams of a fentanyl analogue.[51] As discussed above, phenylfentanyl is a fentanyl analogue. The 2016 guidelines version recommends a sentence for possession of a certain amount of fentanyl analogue without reference to whether it is scheduled or not. The Court's application of the 2016 guidelines to sentence Jones was not an *ex post facto* violation.

### e. There Was No Fraud Upon the Court.

Finally, Jones argues that the prosecutors committed fraud upon the Court and that his counsel was ineffective for failing to research and investigate the fraud and file a motion

---

[48] Doc. 51 at 21-23.
[49] *Id.*
[50] *Id.*
[51] Doc. 18.

-10-

challenging it.[52] In making this claim Jones relies upon a document produced in discovery showing that Jones's coconspirator sent money to China in August, September, and October of 2017.[53] The indictment and plea agreement both state that the coconspirator wired money in November of 2017. According to Jones the discrepancy constitutes fraud upon the Court.

Fraud upon the court is "fraud which attempts to subvert the integrity of the court . . . or which corrupts or attempts to corrupt the court or a member thereof, or the judicial process itself."[54]

A discrepancy between the indictment and a discovery document does not establish fraud upon the Court. The money transfer document was never used as evidence and it did not form any basis for Jones's conviction. Jones's conviction relied upon his plea agreement and his sworn plea statement that the facts presented in the plea agreement were true.

Additionally, the Court fails to see how the discrepancy that Jones identifies has any relevance to his decision to enter a plea. Jones does not dispute that his coconspirator sent the money in exchange for illegal drugs. Whether the money was sent in November or in the months before does not alter the existence of the conspiracy for which Jones was charged and pleaded guilty.

Jones's counsel was not ineffective for failing to raise a motion concerning fraud

---

[52] Doc. 51 at 24-26.
[53] The Court has not reviewed the money gram, which was not submitted by either party. Defendant Jones claims to have reproduced the substance of the document in his affidavit. Doc. 51-1 at 11. In any event, the Court concludes that Jones has failed to argue why any discrepancy in this document and the plea agreement led his counsel to be so ineffective as to affect Jones's decision to enter the plea.
[54] 21A Fed. Proc., L. Ed. § 51:195.

Case No. 4:17-cr-00524
Gwin, J.

upon the Court.

### IV. Jones Is Not Entitled to Appointed Counsel.

Jones also moves for the Court to appoint counsel and to allow limited discovery in this case.[55] Jones says he needs appointed counsel because of his claims' complicated nature.[56]

Defendants do not have a habeas proceedings right to counsel.[57] The Court appoints counsel only "where the interest of justice or due process so require."[58] In determining whether to appoint counsel, the Court "should consider the legal and factual complexity of the case, the [Defendant's] ability to investigate and present his claims, and any other relevant factors."[59]

The present case is easily decided on the basis of the record before the Court. The case is not so complex, nor does it call for any discovery or hearings, such that counsel should be appointed.

In discovery Jones seeks two sets of items: 1) "all incoming and outgoing emails" from his personal email account, and 2) "telephone calls" between Jones and his former counsel.[60] Jones says that the requested materials are germane to his claims and that they in part also relate to his counsel's withholding of a disc containing discovery materials.

Jones does not explain why Jones does not have access to his own emails and does not explain how the requested materials could further the specific claims that Jones makes

---

[55] Doc. 50.
[56] *Id.*
[57] *Post v. Bradshaw*, 422 F.3d 419, 425 (6th Cir. 2005).
[58] *U.S. v. Mohammad*, No. 3:16-cr-358(1), 2019 WL 2644211, at *9 (N.D. Ohio June 27, 2019).
[59] *Id.* (quotations and citations omitted)
[60] Doc. 50.

Case No. 4:17-cr-00524
Gwin, J.

in his petition. Also, the Court does not see any relevance. The request for discovery is therefore denied.

### V. An Evidentiary Hearing Is Not Required.

Defendant requests an evidentiary hearing in his traverse.[61] Jones has not argued why he believes a hearing to be necessary other than an assertion that it will help "reach the merits of all claims."[62] The record adequately establishes that Defendant Jones is not entitled to relief. A hearing is therefore unnecessary.[63]

### VI. Conclusion

Jones has not shown that his counsel was ineffective or that his plea was not knowingly, voluntarily, or intelligently entered.

For the foregoing reasons, the Court **DENIES** the Defendant's petition to vacate, set aside, or correct his sentence. The Court also **DENIES** the Defendant's motion for counsel and limited discovery and the request for an evidentiary hearing.

IT IS SO ORDERED.

Dated: November 25, 2019             _s/      James S. Gwin_
                                                        JAMES S. GWIN
                                                        UNITED STATES DISTRICT JUDGE

---

[61] Doc. 56.
[62] *Id.* at 16.
[63] *Mohammad,* 2019 WL 2644211 at *9 (citing 28 U.S.C. § 2255(b)) ("[A]n evidentiary hearing is not required in a § 2255 proceeding if the record conclusively establishes that a petitioner is not entitled to relief.").

-13-